FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

2011 MAY 17 P 2: 46

### Alexandria Division

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

LEE BENTLEY FARKAS,                          :
                                             :
                          Plaintiff,         :
                                             :   Case No.  1:11 cv 529
vs.                                          :               LMB/IDD
                                             :
NATIONAL UNION FIRE INSURANCE                :
COMPANY OF PITTSBURGH, PA.,                  :
                                             :
                          Defendant.         :

### VERIFIED COMPLAINT

The Plaintiff, Lee Bentley Farkas ("Farkas"), for his Verified Complaint for Injunctive

and Declaratory Judgment and Breach of Contract against National Union Fire Insurance

Company of Pittsburgh, Pa. ("National Union"), alleges as follows:

### Nature of the Action

This case relates to a $5,000,000 Directors and Officers ("D&O") insurance policy issued

by National Union, under which Farkas is an insured.  In December 2010, National Union

agreed, pursuant to its policy, to reimburse defense costs incurred by Farkas in connection with a

criminal proceeding pending against him in this District.  National Union approved the hiring of

Farkas's legal team and was provided status reports by counsel prior to trial.  A jury found

Farkas guilty on April 19, 2011.  Without warning and contrary to their policy and agreement,

National Union determined on April 28, 2011 that it would refuse to reimburse any of the

approximate $2,000,000 in defense costs Farkas incurred during trial, even though more than

$4,000,000 remains on the Policy.  National Union's refusal to reimburse these defense costs

constitutes a breach of contract and threatens to deny Farkas the right to counsel and defense

guaranteed by the policy.

National Union also refuses to reimburse Farkas's defense costs going forward, even

though the Policy requires such costs be reimbursed up through a "final disposition," which

would provide Farkas with counsel through the appellate process and any new trial and

subsequent appeal. National Union's refusal to reimburse accrued defense costs and defense

costs going forward represents an immediate and irreparable harm with no adequate remedy at

law. For this reason, Farkas seeks declaratory relief in defining "final disposition" and injunctive

relief ordering National Union to reimburse his defense costs prior to a final disposition in his

criminal proceeding.

## Jurisdiction and Venue

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because

there is diversity of citizenship and the amount in controversy exceeds the sum of $75,000,

exclusive of interest and costs.

2.      There is personal jurisdiction over National Union because it is registered to and

does conduct business in the Eastern District of Virginia.

3.      Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(c)

because the Defendant is subject to personal jurisdiction in Virginia. Venue is also proper under

28 U.S.C. § 1391(a) because a substantial part of the events giving rise to this claim occurred in

this District.

**The Parties**

4.      Farkas is a resident of Ocala, Florida.

5.      National Union is a Pennsylvania corporation with its principal place of business at 175 Water Street, 18th Floor, New York, New York.

**The National Union D&O Insurance Policy**

6.      At all times relevant to this Complaint, National Union was the issuer and/or insurer of a Directors, Officers and Private Company Liability and Insurance Policy (the "Policy") under which Farkas was an Individual Insured. [1] The Policy is attached as Exhibit A and is incorporated by reference herein.

7.      The Policy generally provides coverage for claims against Insured Persons for Wrongful Acts.

8.      Individual Insured is defined as *"any past, present or future duly elected or appointed directors, officers..."* and *"any Employee(s) of the Company."*

9.      At all times relevant to this Complaint, Farkas was an Officer and/or Director, as well as majority shareholder, of Taylor, Bean and Whitaker Mortgage Corporation ("TBW").

10.     The Insuring Agreement whereby National Union agreed to insure Farkas states as follows:

> *COVERAGE A:  INDIVIDUAL INSURED INSURANCE*
> *This Policy shall pay the Loss of each and every Director, Officer or Employee of the Company arising from a Claim first made against such Insureds during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in their*

---

[1]     Unless otherwise noted, Capitalized terms shall have the meaning ascribed to them in the Policy.

*respective capacities as Directors, Officers or Employees of the Company except when and to the extent that the Company has indemnified such Insureds. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.*

11.   Loss is defined in Definition (k) of the Policy as:

*"Loss" means damages (including back pay and front pay), judgments, settlements, pre- and post- judgment interest, and Defense Costs...*

12.   Claim is defined in Definition (b) of the Policy as:

*2.       a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:*

*i.   service of a complaint or similar proceeding; or*

*ii.  return of an indictment (in the case of a criminal proceeding); or*

*iii. receipt or filing of a notice of charges.*

13.   Wrongful Act is defined in Definition (t) of the Policy as:

*(1)      with respect to Individual Insureds, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Insureds in their respective capacities as such, or any matter claimed against such Insured solely by reason of their status as directors, officers or Employees of the Company.*

14.   Defense Costs are defined in Definition (e) of the Policy as:

*(e)      "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulted solely from the investigation, adjustment, defense and appeal of a*

4

*Claim against the Insureds, but excluding salaries of officers or Employees of the Company.*

15.    The "Exclusions" provision in the Policy provides, in part:

*The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:*

    *(a)    arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an Insured was not legally entitled;*

             *              *      \*      \*      \*

    *(c)    arising out of, based upon or attributable to the committing in fact of any criminal, fraudulent or dishonest act, or any willful violation of any statute, rule or law;*

16.    The Policy provides that Farkas was to defend himself and that National Union was to reimburse his Defense Costs prior to a final disposition in the Criminal Proceeding:

    *8.    DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)*

*The Insurer does not assume any duty to defend.  The Insureds shall defend and contest any Claim made against them.*

              \*      \*      \*

*When the Insurer has not assumed the defense of a Claim pursuant to this Clause 8, the Insurer shall advance nevertheless, at the written request of the Insured, Defense Costs prior to the final disposition of a Claim.  Such advanced payments by the Insurer shall be repaid to the Insurer by the Insureds or the Company, severally according to their respective interests, in the event and to the extent that*

5

*the Insureds or the Company shall not be entitled under the terms and condition*

*of this policy to payment of such Loss.*

### National Union Agrees That Farkas's Criminal Proceeding
### Constitutes a Covered Claim Under the Policy

17.     On or about June 15, 2010, a federal grand jury in the Eastern District of Virginia

returned an indictment against Farkas (Case No. 10-CR-200-LMB, *U.S.A. v. Farkas*)

(hereinafter, "Criminal Proceeding") alleging Farkas committed, and conspired to commit,

various instances of bank, wire, and securities fraud in the course of his employment and

operation of TBW.

18.     National Union was notified of the Indictment against Farkas on June 16, 2010

and National Union thereafter determined that the Criminal Proceeding constituted a covered

Claim under the Policy.

### National Union Initially Refuses to Reimburse Farkas's Defense Costs
### Until Farkas Meets $1,000,000 Retention

19.     Despite making a determination that Farkas's Criminal Proceeding constituted a

covered Claim, between June 16, 2010 and November 19, 2010, National Union refused to

reimburse any Defense Costs on the ground that Farkas had not met his Retention (*i.e.*

deductible).

20.     The Policy lists Retention Amounts that must be borne by the Insured prior to

National Union providing coverage under the Policy.  The Retention Amounts range from zero

to $1,000,000, depending on how the Claim is categorized.

21.     National Union took the position that the Retention amount was $1,000,000.

National Union also took the position that Defense Costs borne by Farkas prior to the filing of

the Indictment did not count towards the Retention.

6

22.    National Union was well aware that Farkas's assets had been frozen by the Government, that Farkas was prohibited by Court order from transferring more than $1,000 to any third party, and that TBW had denied Farkas's request for indemnification.

23.    Nevertheless, having found Farkas's Claim was covered under the Policy, subject to a reservation of rights, National Union refused to begin advancing Defense Costs to Farkas unless and until Farkas had personally borne $1,000,000 in Defense Costs.

### Farkas And National Union Reach Agreement Over the Retention and National Union Begins Reimbursing Defense Costs

24.    Between June 16, 2010 and November 19, 2010, Farkas was unable to retain defense counsel and was provided with court-appointed counsel to defend him in the Criminal Proceeding.

25.    On November 19, 2010, faced with a fast approaching trial date and National Union's refusal to release money with which to fund his defense, Farkas agreed to enter into an "Agreement to Advance Defense Costs and General Release" with National Union, which was later memorialized in a December 8, 2010 Agreement (the "December Agreement"). The December Agreement is attached as Exhibit B and incorporated by reference herein.

26.    In the December Agreement, Farkas agreed to release claims against National Union pertaining to its handling of his Claim up to December 8, 2010 (*i.e.* bad faith pertaining to the requirement that he pay a $1,000,000 Retention). Future claims were not released. In return, National Union and Farkas agreed to disagree over whether the Retention had been satisfied, but National Union agreed that National Union would disburse funds under the Policy for Defense Costs incurred from November 19, 2010 forward.

27.    The December Agreement provided that National Union would disburse to Farkas's counsel up to $1,000,000 in Defense Costs, and that Defense Costs beyond $1,000,000

7

could be advanced to Farkas "subject to Bankruptcy Court approval." Bankruptcy Court

approval was subsequently obtained permitting National Union to disburse $3,000,000 of the

$5,000,000 Policy.

### National Union Is Provided with Reports from Counsel Detailing
### Anticipated Defense Costs Likely to be Incurred and Does not Object

28.     As required by the December Agreement, Farkas's counsel provided National

Union with an "Initial Status Report" on December 21, 2010, identifying the various

timekeepers, experts and vendors that would be working on Farkas's defense.

29.     Farkas's counsel provided National Union with an updated report on January 21,

2011, explaining the role of the various lawyers retained and informing National Union that

counsel intended to retain certain experts to assist in preparation of trial.

30.     National Union did not object to the proposed budgets outlined in the December

21, 2010 or January 21, 2011 status reports and was thus well aware of the Defense Costs likely

to be incurred in the Criminal Proceeding.

31.     Beginning in late December, Farkas's attorneys began the task of preparing to

defend Farkas in the Criminal Proceeding, in which the government alone produced over 61

million pages of documents for inspection and in which third parties from whom counsel sought

documents were, at best, obstructionist.

32.     Between December 2010 and April 4, 2011, Farkas's defense team prepared for

trial, retained expert and consulting witnesses, and provided National Union with multiple

reports of their activities.

33.     Farkas's Criminal Proceeding began on April 4, 2011.

34.     On April 8, 2011, Steven J. Brodie, counsel for National Union, sent a letter to

Farkas's counsel in which he provided counsel with a written summary of the Defense Costs

"incurred under the Policy to date," reflecting payments to that date of $928,977.59. The April 8 Letter is attached as Exhibit C and incorporated by reference herein.

35.     The April 8 Letter stated that "[i]f the bankruptcy court approves additional relief from stay to authorize National Union to pay more than $1,000,000, National Union will do so, subject to its complete reservation of rights and all the terms and conditions of the December 8, 2010 Agreement."

36.     In reliance on the April 8, 2010 letter, Farkas's counsel continued to incur fees and expenses, including expenses owed to third party vendors and experts.

37.     A guilty verdict in the Criminal Proceeding was entered against Farkas on April 19, 2011.

**National Union Notifies Farkas's Counsel That It Would be Refusing to Reimburse Defense Costs in the Criminal Proceeding on a Retroactive and Prospective Basis**

38.     On April 28, 2011, Steven J. Brodie, counsel for National Union, sent a letter to Farkas's counsel stating that National Union would no longer advance Defense Costs or Policy benefits to Farkas. The April 28, 2011 Letter is attached as Exhibit D and incorporated by reference herein. This decision was based on National Union's own determination that the April 19, 2011 guilty verdict established that Farkas and/or TBW made misrepresentations when applying for the Policy, notwithstanding that the Indictment made no specific allegations regarding TBW's audited financial statements or information provided to National Union in the application.

39.     National Union also notified counsel that, contrary to its promise in the April 8, 2011 Letter, it would not reimburse any outstanding Defense Costs, including all of the expenses, legal fees, expert fees, and other costs incurred by Farkas's trial team during the trial.

40.     In an attempt to resolve this dispute between the parties, Farkas's counsel sent a

letter to counsel for National Union on May 6, 2011. National Union responded in a letter dated

May 11, 2011, confirming their refusal to advance any further Defense Costs whether incurred

by Farkas during the course of the trial or related to any appeal of the April 19, 2011 verdict.

The May 6, 2001 letter is attached as Exhibit E and the May 11, 2011 is attached as Exhibit F

and both are incorporated by reference herein.

    41.    National Union's decision to terminate coverage under the Policy was based on

their own determination that Mr. Farkas's conviction triggered Exclusions 4(a) and 4(c) of the

Policy. This unilateral determination was prior to the Criminal Proceeding reaching a final

disposition.

    42.    While not defined in the Policy, it is well settled under Florida law[2] that "final

disposition" does not occur until post-conviction remedies have been exhausted.

    43.    The Policy specifically contemplates that Defenses Costs includes costs of

appeals, as evidenced by Clause 2(e), which specifically defines "premiums for any appeal

bond" as "Defense Costs."

    44.    National Union's obligation to advance Defense Costs accrued at the time the

Defense Costs were incurred.

    45.    As set forth above, the Policy by its terms requires the payment of Defense Costs

for Directors and/or Officers facing criminal charges unless and until one of two events occurs:

1) there is a "final disposition" of the charges; or 2) a determination is made that the "Insureds or

the Company" is not entitled to coverage by the Policy.

    46.    As acknowledged in the December Agreement, and having previously found that

Farkas was entitled to coverage by the Policy (subject to a reservation of rights), there simply

---

[2]    Florida law controls pursuant to the terms contained in the December Agreement and the original Policy.

exists no basis for change in said determination until a "final disposition" is reached in the Criminal Proceeding.

**The TBW Bankruptcy Court Has Ruled That the Policy is Not Property of the TBW Estate**

47.    At all relevant times, TBW was, as it continues to be, a Debtor-in-Possession in a pending bankruptcy case in the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court"). (Case No. 09-07047, Bankr. M.D. Fla.).

48.    Prior to releasing any funds otherwise payable under the Policy for Farkas's Defense Costs, National Union filed a motion with the Bankruptcy Court (the "First Bankruptcy Motion") (Case No. 09-07047, Bankr. M.D. Fla., Docket No. 1534) seeking a determination that at least $3,000,000 of the $5,000,000 potentially payable under the Policy was not property of the bankruptcy estate or that, in the alternative, if the $5,000,000 was property of the bankruptcy estate, that the facts and circumstances justified dispersal of up to $3,000,000 for Defense Costs.

49.    National Union submitted an alternate prayer for relief requesting that the Bankruptcy Court allocate $3,000,000 between Farkas and two other Individual Insureds, Raymond Bowman ("Bowman") and Paul Allen ("Allen"), who had notified National Union of the potential that they would make claims against the Policy.

50.    On September 14, 2010, the Bankruptcy Court granted the First Bankruptcy Motion in its entirety, finding that $3,000,000 of the Policy proceeds was not property of the bankruptcy estate.  In the alterative, National Union was authorized to allocate $1,000,000 each to the Defense Costs of Farkas, Bowman, and Allen (Case No. 09-07047, Bankr. M.D. Fla., Docket No. 1934).

51.    Pursuant to the December Agreement, and as a result of the alternate ruling created by National Union's inartful pleading in the First Bankruptcy Motion, Farkas was forced,

in the midst of his Criminal Proceeding, to employ Florida counsel to file a Motion for Relief

From Stay (the "Second Bankruptcy Motion") seeking Bankruptcy Court approval for National

Union to disburse the $3,000,000 which the same Court had already ruled not to be part of the

bankruptcy estate pursuant to the terms of the Policy (Case No. 09-07047, Bankr. M.D. Fla.,

Docket No. 2949).

52.     Farkas filed the Second Bankruptcy Motion on April 12, 2011 on an emergency

basis. Other than filing a pleading restating its Reservation of Rights, National Union took no

position on the Second Bankruptcy Motion (Case No. 09-07047, Bankr. M.D. Fla., Docket No.

2972).

53.     The Second Bankruptcy Motion was heard on an emergency basis and orally

granted on April 21, 2011, thus re-confirming that at least $3,000,000 of the $5,000,000 Policy is

not property of the TBW Estate and can be disbursed pursuant to the terms of the Policy.

Farkas's counsel was in Virginia continuing to represent Farkas in the ongoing Criminal

Proceeding.  National Union was tasked with drafting a written Order.

54.     The Order granting the Second Bankruptcy Motion, drafted by National Union

and approved by Farkas's counsel, was signed May 6, 2011, and specifically stated "[a]s

previously found, Coverage A of National Union's Policy is not property of the bankruptcy

estate and therefore, the automatic stay imposed by 11 U.S.C. § 362(A) is not applicable." Case

No. 09-07047, Bankr. M.D. Fla., Docket No. 3027.  The May 6, 2011 Order is attached as

Exhibit G and incorporated herein.

55.     National Union has legal authorization to advance pursuant to the terms of the

Policy up to $5,000,000, less that already advanced, towards Defense Costs already incurred or

which could be incurred in evaluating and pursuing grounds for appeal of the verdict.

12

## Effect of Wrongful Withdrawal of Coverage

56.     National Union's refusal to advance Defense Costs has resulted in Farkas's criminal defense counsel, experts, and support service providers not being paid for work performed prior to the conclusion of the criminal trial, even though more than $4,000,000 of the $5,000,000 Policy is available.

57.     More importantly, National Union's decision to cease advancing Defense Costs without cause will make it impossible for Farkas to fund his defense during the narrow window of time available for evaluating and pursuing grounds for appeal.

58.     In sum, National Union's decision to cease advancing Defense Costs without cause stands to cause irreparable harm to Farkas.

## COUNT ONE – INJUNCTIVE RELIEF

59.     Farkas repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

60.     Pursuant to Federal Rule of Civil Procedure 65(a), Farkas requests the issuance of a preliminary and permanent injunction requiring National Union to continue reimbursing Farkas's Defense Costs through the final disposition of his Criminal Proceeding up to the full policy limits of the Policy.

61.     If National Union is not ordered to continue reimbursing his Defense Costs, Farkas will suffer real, immediate and irreparable injury, which will deny Farkas the right to counsel and defense guaranteed by the policy.

62.     For the reasons articulated above, monetary damages would not provide adequate relief.

63.     There is no other plain, speedy, and adequate remedy at law and granting a

preliminary injunction will serve the public interest by continuing to provide Farkas with counsel through a final disposition of his Criminal Proceeding.

64.    Farkas has a substantial likelihood of success on the merits of his claims, as National Union itself has agreed his Criminal Proceeding is a covered Claim and the Policy requires that Defense Costs be reimbursed through a final disposition in the Criminal Proceeding.

65.    The balance of equities mandates the issuance of a preliminary and a permanent injunction. National Union will not be harmed if it is directed to continue reimbursing Defense Costs. Their own Policy requires Farkas to repay them in the event, upon final disposition of the Criminal Proceeding, it is determined that he was not entitled to coverage.

## COUNT TWO – DECLARATORY JUDGMENT

66.    Farkas repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

67.    Farkas has performed all conditions required on his part by the Policy issued by National Union.

68.    Farkas has and will continue to incur Defense Costs in connection with his Criminal Proceeding, including sentencing, forfeiture, and the appeal of his jury verdict.

69.    Farkas seeks a judicial determination by this Court that National Union is required to reimburse Farkas's Defense Costs through and including a "final disposition" in the Criminal Proceeding, as set forth in their own Policy.

70.    Unless the respective rights of Farkas and National Union are declared by this Court, Farkas will be deprived of the benefits and protections provided to him under the Policy.

71.    Farkas has no adequate remedy at law because he will continue to be damaged in amounts not presently ascertainable.

## COUNT THREE – BREACH OF CONTRACT

72.     Farkas repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

73.     Farkas has performed all conditions required on his part by the Policy issued by National Union.

74.     National Union agreed that Farkas is an "Insured" under the Policy and that his Criminal Proceeding constitutes a Covered Claim under the Policy.

75.      Farkas has incurred reasonable Defense Costs covered under the Policy.  The Policy requires these Defense Costs be reimbursed by National Union on an as-incurred basis.

76.     National Union consented to Farkas's retention of his legal team and was fully aware of the Defense Costs to be incurred.  Farkas relied on National Union's agreement to cover his Criminal Proceedings in continuing to litigate the case as he did.  Full payment of Farkas's Defense Costs has been demanded and National Union has refused to reimburse these Defense Costs as promised.

77.     National Union's refusal to pay previously incurred Defense Costs as well as future Defense Costs constitutes a breach of National Union's obligations under the Policy.

78.     National Union has damaged Farkas in an amount of approximately $2,000,000, which represents the unpaid Defense Costs owing and due under the Policy to date.

79.     National Union has further damaged Farkas in the amount of legal fees and disbursements for this lawsuit to collect under the Policy, which are recoverable under Florida law.

WHEREFORE, Farkas requests Judgment in his favor and against National Union as follows:

(i)     A preliminary and permanent injunction requiring National Union to reimburse Defense Costs incurred in the Criminal Proceeding unless and until a final disposition is obtained, in the full amount available under the Policy;

(ii)     For a declaration of the definition of "final disposition" as that term is used in the Policy;

(iii)     In the event the Court does not grant injunctive relief, for an award of money damages for National Union's breach of contract, in an amount in excess of $2,000,000;

(iv)     For legal fees and expenses incurred in this suit, as permitted by Florida law;

(v)     For pre-judgment interest, as permitted by law;

(vi)     For post-judgment interest, as permitted by law;

(vii)     For all remedies permitted by the various claims asserted; and

(viii)     For such other and further relief as the Court deems just and appropriate.

This 17th day of May, 2011.

By: _____

WILLIAM B. CUMMINGS, ESQUIRE
VA Bar No. 6469
Co-Counsel for LEE BENTLEY FARKAS
WILLIAM B. CUMMINGS, P.C.
Post Office Box 1177
Alexandria, Virginia  22313
(703) 836-7997
Fax (703) 836-0238
wbcpclaw@aol.com

BRUCE S. ROGOW, ESQUIRE
*Pro Hac Vice Admission Pending*
Co-Counsel for LEE BENTLEY FARKAS
BRUCE S. ROGOW, PA
500 E. Broward Boulevard, Suite 1930
Ft. Lauderdale, Florida 33394
(954) 767-8909
FAX (954) 764-1530
brogow@rogowlaw.com

CRAIG H. KUGLAR, ESQUIRE
E. BERK SAULS, ESQUIRE
*Pro Hac Vice Admission Pending*
Co-Counsel for LEE BENTLEY FARKAS
LAW OFFICE OF CRAIG KUGLAR, LLC
1130 Piedmont Avenue Suite 913
Atlanta, Georgia 30309
(404) 432-4448
FAX (404) 393-8007
ck@kuglarlaw.com
berk@kuglarlaw.com

17

## VERIFICATION

I, Lee Bentley Farkas, hereby verify that the foregoing is true and correct to the best of my knowledge and ability.

Lee Bentley Farkas