IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LEE BENTLEY FARKAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:11cv529 (LMB/IDD) |
| | ) |
| NATIONAL UNION FIRE INSURANCE, | ) |
| COMPANY OF PITTSBURGH, PA | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Before the Court is plaintiff Lee Bentley Farkas's ("Farkas") Motion for Preliminary Injunction [Dkt. No. 5], in which he seeks a preliminary injunction requiring defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") to continue to pay the attorney's fees and costs he has incurred, and will continue to incur, in defending against a criminal prosecution. For the reasons stated below, the motion will be denied.

### I. Background

National Union issued a Directors, Officers and Private Company Liability Insurance policy to Farkas's mortgage company, Taylor, Bean & Whitaker Mortgage Corp., ("TBW"). The policy has an aggregate limit of liability of $5 million. Compl. Ex. A. The policy will

> pay the Loss of each and every Director, Officer or
> Employee of the Company arising from a Claim first
> made against such Insureds during the Policy Period or

the Discovery Period (if applicable) and reported to
the Insurer pursuant to the terms of this policy for
any actual or alleged Wrongful Act in their respective
capacities as Directors, Officers or Employees of the
Company except when and to the extent that the Company
has indemnified such Insureds. The Insurer shall, in
accordance with and subject to Clause 8, advance
Defense Costs of such Claim prior to its final
disposition.

Compl. Ex. A ¶ 1. The policy defines a "Claim" as:

a civil, criminal, administrative, regulatory or
arbitration proceeding for monetary or non-monetary
relief which is commenced by:
i. service of a complaint or similar proceeding; or
ii. return of an indictment (in the case of a criminal
proceeding); or
iii. receipt or filing of a notice of charges.

Id. ¶ 2(b). Clause 8 requires National Union to advance

defense costs:

When the Insurer has not assumed the defense of a
Claim pursuant to this Clause 8, the Insurer shall
advance nevertheless, at the written request of the
Insured, Defense Costs <u>prior to the final disposition</u>
of a Claim. Such advanced payments by the Insurer
shall be repaid to the Insurer by the Insureds or the
Company, severally according to their respective
interests, in the event and to the extent that the
Insureds or the Company shall not be entitled under
the terms and conditions of this policy to payment of
such Loss.

Id. ¶ 8 (emphasis added).

The policy excludes several types of claims from coverage.
Material to this dispute are exclusions for claims:

> [4A:] arising out of, based upon or
> attributable to the gaining in fact of any
> profit or advantage to which an Insured was
> not legally entitled; . . . [and 4C:]
> arising out of, based upon or attributable

2

> to the committing in fact of any criminal, fraudulent or dishonest act, or any willful violation of any statute, rule or law. Id. ¶ 4.

Farkas was chairman and majority shareholder of TBW, which filed for bankruptcy in August 2009. In June 2010, Farkas was indicted and charged in <u>United States v. Lee Bentley Farkas,</u> 1:10cr200 with multiple counts of conspiracy to commit and committing bank, wire, and securities fraud, in violation of federal law. Compl. ¶ 17. On June 16, 2010, Farkas notified National Union of the indictment, and on August 2, 2010, National Union responded with a reservation of rights letter, in which it acknowledged that the indictment started a criminal proceeding covered under the policy; however, the letter also quoted Exclusions 4A and 4C, warning that if they were triggered, all coverage would be precluded. Ex. A to Opp.

National Union also notified Farkas that the policy required Farkas to pay a $1 million deductible before National Union advanced defense costs. Throughout 2010, Farkas and National Union disputed whether Farkas had met the deductible. On September 14, 2010, the bankruptcy court authorized National Union to allocate up to $1 million to Farkas's defense.[1] In

---

[1] The bankruptcy court approved up to $3 million in expenditures, allocating $1 million each to Farkas, and co-conspirators former TBW CEO Paul Allen, and former TBW president Ray Bowman to cover their defense costs.

December 2010, the parties reached a settlement agreement in which National Union agreed to advance up to $1 million of Farkas's defense costs, subject to a reservation of rights, and further agreed that defense costs beyond that amount could be advanced to Farkas subject to bankruptcy court approval. Compl. ¶ 25. To date, National Union has paid approximately $930,000 to fund Farkas's defense. Opp. at 5.

On April 4, 2011, Farkas's criminal trial began. Id. ¶ 32. On April 8, 2011, National Union sent Farkas's counsel a letter advising that the invoices submitted to that time exceeded $1 million by $383,001.93 and that National Union would not advance funds over $1 million without additional relief from the bankruptcy court; but that if the bankruptcy court approved payments greater than $1 million, National Union would make the payments, once again, "subject to its complete reservation of rights" and under the terms and conditions of the December 2010 agreement.[2] Ex. C. to Compl.

On April 19, 2011, the jury found Farkas guilty of all 14

---

[2] On May 6, 2011, the bankruptcy court authorized National Union to advance up to $3 million for Farkas's defense. The Court's order also included language preserving National Union's reservation of rights. ". . . nothing in this Order shall be deemed to compel National Union to advance any Defense Costs under its Policy and National Union specifically reserved its rights to deny coverage under the terms, conditions, and exclusions contained in the Policy, to seek recoupment of Defense Costs previously funded under the Policy as well as to avoid or rescind the Policy as a result of any omission or misstatements in connection with the application for the National Union Policy."

4

fraud and conspiracy counts that were tried. In light of those convictions, on April 28, 2011, National Union informed Farkas that the jury's verdict triggered the "in fact" element of exclusions, 4A and 4C, and on that basis, National Union would no longer fund defense costs and would, under its reservation of rights, consider seeking reimbursement from Farkas for the defense costs that it had already advanced. Ex. D to Compl.

In this civil action against National Union, Farkas seeks injunctive relief requiring National Union to reimburse defense costs through the appeals process and a declaration of the definition of "final disposition." Farkas claims that he has incurred a total of $2,035,288.63 in defense costs through trial and verdict and, at minimum, seeks the unpaid portion of that balance. Alternatively, Farkas alleges breach of contract and seeks damages in excess of $2 million.

## II. Discussion

To obtain a preliminary injunction, the movant must establish that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008); The Real Truth About Obama v. FEC, 575 F.3d 342 (4th Cir. 2009), vacated in part on other grounds at 130 S.Ct. 2371 (2010).

A.  Likelihood of success on the merits

National Union correctly argues that Farkas has failed to demonstrate that it is likely he will succeed on the merits. Opp. at 9. The jury's guilty verdict clearly triggered Exclusion 4A, which excludes from coverage claims "arising out of, based upon or attributable to the gaining <u>in fact</u> of any profit or advantage to which an Insured was not legally entitled," and Exclusion 4C, which excludes from coverage claims "arising out of, based upon or attributable to the committing <u>in fact</u> of any criminal, fraudulent or dishonest act, or any willful violation of any statute, rule or law[.]" (emphasis added). Courts have found that similar exclusions containing the "in fact" requirement become effective with "some pertinent factual finding" that the insured's behavior fell within the exclusion. <u>Virginia Mason Medical Center v. Executive Risk Indem., Inc.</u>, 2007 WL 3473683, at *5 (W.D. Wash. Nov. 14, 2007); <u>see also</u> <u>Nat'l Union Fire Ins. Co. v. Continental Ill. Corp.</u>, 666 F. Supp. 1180, 1199-1201 (N.D. Ill. 1987). Some courts have required even less evidence to trigger an "in fact" exclusion. For example, in <u>Steadfast Insurance Co. v. Stroock & Stroock & Lavin, L.L.P.</u>, 108 Fed. App'x. 663 (2d Cir. 2004), the Court found that the "in fact" exclusion required only that the allegations made against the insured fall within the exclusion, and in <u>Gardner v. Cumis Ins. Society, Inc.</u>, 582 So. 2d 1094, 1096 (Ala. 1991), the Court

6

found that an "in fact" exclusion applied even though the insured had been acquitted of criminal charges. Under this caselaw, Farkas's multiple convictions for conspiracy and bank, wire, and securities fraud clearly trigger the policy's "in fact" exclusions. To convict Farkas, the jury had to find that the evidence of fraud met the high evidentiary standard of "proof beyond a reasonable doubt." That finding constitutes far more than "some pertinent factual finding" of fraudulent conduct and fully supports the conclusion that exclusions 4A and 4C now apply, thereby releasing National Union from any further obligation to fund Farkas's defense costs.

Despite the jury's finding, Farkas contends that National Union remains obligated to fund his defense until the appeal of his criminal conviction is concluded, relying upon the policy's provision in Clause 8 that defense costs will be provided "prior to [the claim's] final disposition." This argument fails because it ignores the entire insurance policy. When read in its entirety, it is clear that National Union's policy does not require payment of defense costs for a claim that is not covered by the policy. Accordingly, Farkas fails to satisfy the first Winter element.

B. Irreparable harm

Farkas argues that he would suffer irreparable harm if his preliminary injunction is denied because he would be unable to

7

effectively prepare for his asset forfeiture and sentencing hearings.[3] Farkas also argues that he will be unable to appeal the jury verdict that has resulted in a sentence of 30 years imprisonment. Mot. for Prelim. Injunction at 12.

National Union responds that Farkas has not made a clear showing that irreparable harm is likely. If insurance coverage is denied, Farkas will be entitled to appellate representation by the Federal Public Defender or by court-appointed counsel, each of whom is required to provide competent legal representation. Opp. at 18.

Farkas has not clearly demonstrated that he would be irreparably harmed if he were represented by the Federal Public Defender or court-appointed counsel. In 2010, before Farkas reached a settlement agreement with National Union, the Court appointed William B. Cummings, Jr. to be Farkas's attorney under the Criminal Justice Act, 18 U.S.C. § 3006A. Farkas later retained Cummings as local counsel and he has remained Farkas's attorney throughout trial, and has even been retained for this civil action. In <u>Pendergest-Holt v. Certain Underwriters at Lloyd's of London</u>, 751 F. Supp. 2d 876 (S.D. Tex. 2010), the Court faced a similar question about possible irreparable harm

---

[3] This argument is moot as Farkas was sentenced on June 30, 2011 and the forfeiture proceeding also occurred on that day. He was represented at both proceedings by his present counsel. On July 12, 2011, he filed a Notice of Appeal.

when it considered whether coverage was excluded under an "in fact" determination that the insureds had committed money laundering. The insureds sought a stay of the court's decision pending appeal. The district court concluded that the insureds could not establish irreparable harm because they could apply for an appellate attorney under the Criminal Justice Act. Similarly, Farkas has failed to demonstrate that such court-appointed counsel would be inadequate. Accordingly, Farkas has not established that it is likely he would be irreparably harmed if the preliminary injunction were denied.

C.  Balance of equities

Farkas argues that the "balance of hardships" favors him because he faces an unquantifiable harm, whereas National Union could recoup the money that it advanced to him if Farkas ultimately loses his appeal. Mot. for Prelim. Injunction at 14.[4]

National Union correctly responds that Farkas has not established that the balance of equities tips in his favor. Opp. at 21. National Union has already advanced $930,000 for Farkas's defense. Farkas's assets have been frozen and he faces significant forfeiture and restitution orders, which are likely to deplete all his financial resources, leaving National Union with little realistic chance to recover any funds that it has

---

[4] Farkas used an outdated preliminary injunction standard and ignores the <u>Winter</u> test, which weighs the "balance of equities" rather than "balance of hardships."

already paid for Farkas's defense costs. For these reasons Farkas has failed to establish that the balance of equities tips in his favor.

D. Public interest

Lastly, Farkas argues that a preliminary injunction would be in the public interest because allowing insurers to withhold payment before the final disposition of a case would result in a serious hardship to insureds and defeat the very purpose of their director and officer insurance. Moreover, allowing insurers to stop payment increases the chances that insureds would be convicted. Farkas also argues there is a strong interest in enforcing valid contracts.

National Union responds that a preliminary injunction under these facts would harm the public interest because it would require insurers to continue paying defense costs long after it became clear that an exclusion applies. Opp. at 23. National Union argues that such an outcome could harm innocent co-insureds who might rightly be entitled to defense costs, and lastly, that Farkas has access to competent legal representation under the Criminal Justice Act.

The jury verdict provides abundant support for National Union's determination that Exclusions 4A and 4C apply. It would not be in the public interest to require an insurer to continue to provide coverage for claims explicitly excluded from the

insurance contract. To require an insurance company to continue to provide coverage for an excluded claim would increase the cost of insurance and cause insurers to be more hesitant to offer liability coverage for corporate directors and officers. For these reasons, Farkas has not demonstrated that a preliminary injunction would be in the public interest.

The Court is keenly aware that it is actually the attorneys who have been representing Farkas who are at the greatest risk of suffering a loss if a preliminary injunction is not granted. These attorneys, who worked aggressively on Farkas's behalf, are owed approximately $1 million for their work and expenses to date. Although one could argue that counsel proceeded at their own risk in taking on this case, knowing that the bankruptcy court might not approve further dispersal of funds and that National Union was reserving its rights, it would still be unfair for them not to be paid, at least enough to cover all their expenses. By agreeing to be retained, these attorneys provided a public service by saving scarce Criminal Justice Act funds. Defense counsel, however, are not the plaintiff in this civil action and have no standing to sue National Union as they are not parties to the insurance contract.

The government has seized or frozen most of Farkas's assets and will be moving to use those recovered assets to provide restitution to the many victims of Farkas's fraudulent activity.

Defense counsel should be included among those to whom some reimbursement is made from those funds. This issue will be taken up with the prosecutors in <u>United States of America v. Lee Bentley Farkas</u>, 1:10cr200.

### III. Conclusion

For the reasons discussed above, Farkas has failed to clearly establish any of the four <u>Winter</u> requirements for a preliminary injunction; therefore, his Motion for a Preliminary Injunction will be denied by an Order that will issue with this Opinion.

Entered this 14th day of July, 2011.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
**United States District Judge**