IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

LEE BENTLEY FARKAS,                    )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )        1:11cv529 (LMB/IDD)
                                       )
NATIONAL UNION FIRE INSURANCE          )
COMPANY OF PITTSBURGH, PA,             )
                                       )
            Defendant.                 )

MEMORANDUM OPINION

Before the Court are cross-motions for summary judgment filed by plaintiff Lee Bentley Farkas ("Farkas" or "plaintiff") and defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union" or "defendant"). Farkas seeks a declaration that coverage under the Directors, Officers and Private Company Liability Insurance Policy ("Policy") purchased from National Union by Taylor Bean and Whitaker Mortgage Corporation ("TBW") did not terminate when the jury returned guilty verdicts in his underlying criminal prosecution on April 19, 2011 and that, even if coverage did terminate with the verdict, all defense costs incurred before April 19, 2011 must be paid by National Union.

National Union moves for summary judgment on its counterclaim, in which it seeks a declaratory judgment that Farkas was not entitled to coverage under the Policy and that National Union is entitled to recoup the defense costs it previously

advanced to Farkas. For the reasons stated below, plaintiff's

motion will be denied and defendant's motion will be granted.

## I.   BACKGROUND

National Union issued to TBW the Policy underlying this

dispute, which became effective September 1, 2008 through August

24, 2012, pursuant to an extension by endorsement. See Br. Supp.

Pl.'s Mot. Summ. J. ("Pl.'s Mem."), Ex. 1 ¶ 4 (Stipulation of

Uncontested Facts). The Policy carries an aggregate limit of

liability of $5 million. See id. By its terms, the Policy will

> pay the Loss of each and every Director, Officer or
> Employee of the Company arising from a Claim first made
> against such Insureds . . . for any actual or alleged
> Wrongful Act in their respective capacities as
> Directors, Officers or Employees of the Company except
> when and to the extent that the Company has indemnified
> such Insureds. The Insurer shall, in accordance with and
> subject to Clause 8, advance Defense Costs of such Claim
> prior to its final disposition.

Compl. Ex. A ¶ 1. "Claim" is defined in part as

> a civil, criminal, administrative, regulatory or
> arbitration proceeding . . . commenced by: (i) service
> of a complaint or similar proceeding; or (ii) return of
> an indictment (in the case of a criminal proceeding); or
> (iii) receipt or filing of a notice of charges.

Id. ¶ 2(b). "Loss" includes defense costs, which the Policy

defines as

> reasonable and necessary fees, costs and expenses
> consented to by the Insurer (including premiums for any
> appeal bond, attachment bond or similar bond, but
> without any obligation to apply for or furnish any such
> bond) resulting solely from the investigation,
> adjustment, defense and appeal of a claim against the

2

Insureds . . . .

Id. ¶ 2(e). Pursuant to Clause 8 of the Policy, National Union

will advance defense costs and retains a right of recoupment:

> When the Insurer has not assumed the defense of a Claim
> pursuant to this Clause 8, the Insurer shall advance
> nevertheless, at the written request of the Insured,
> Defense Costs prior to the final disposition of a Claim.
> Such advanced payments by the Insurer shall be repaid to
> the Insurer by the Insureds or the Company, severally
> according to their respective interests, in the event
> and to the extent that the Insureds or the Company shall
> not be entitled under the terms and conditions of this
> policy to payment of such Loss.

Id. ¶ 8 (emphasis added).

The Policy excludes several types of claims from coverage.

Two such exclusions, found at Clauses 4(a) and 4(c), are relevant

to the pending dispute:

> The Insurer shall not be liable to make any payment for
> Loss in connection with a Claim made against an insured:
> [4(a)] arising out of, based upon or attributable to the
> gaining in fact of any profit or advantage to which an
> Insured was not legally entitled; [and] . . . [4(c)]
> arising out of, based upon or attributable to the
> committing in fact of any criminal, fraudulent or
> dishonest act, or any willful violation of any statute,
> rule or law.

Id. ¶¶ 4(a),(c).

Farkas, who was chairman and majority shareholder of TBW, was

indicted on June 15, 2010 on multiple counts of committing and

conspiring to commit bank, wire, and securities fraud. Compl.

¶¶ 16-17. The next day, Farkas notified National Union of the

3

indictment. Id. On August 2, 2010, National Union responded with a seven-page letter stating that the indictment started a criminal proceeding covered as a claim under the Policy but also alerting plaintiff to the possible applicability of Exclusions 4(a) and 4(c), among other portions of the Policy. See Def.'s Mot. Summ. J. ("Def.'s Mot."), Ex. A. The letter indicated that "[s]hould it be determined that any of [the Policy's] exclusions are implicated, coverage may be limited or precluded for this matter. . . . National Union expressly reserves all rights in this regard." Id. at 5.

National Union also notified Farkas that the Policy's self-retention clause required him to pay a $1 million deductible before National Union advanced defense costs, a point of contention between the parties throughout 2010. Id. at 6; see also Pl.'s Mem., Ex. 3 at 3 n.1. As a further complicating matter, TBW had filed for bankruptcy in August 2009. As a result, National Union believed it required relief from the automatic stay before it could make payments under the Policy. See Compl. Ex. B ¶ 11. On September 14, 2010, the bankruptcy court approved National Union expending up to $3 million in defense costs, allocating $1 million each to Farkas, former TBW CEO Paul Allen, and former TBW president Ray Bowman. See Pl.'s Mem., Ex. 3; Compl. Ex. G. The parties were still, however, in disagreement over the deductible

until December 2010, when they reached a settlement agreement in which National Union agreed to advance up to $1 million of Farkas' defense costs, and further agreed that defense costs beyond that amount could be advanced to Farkas subject to bankruptcy court approval. See Compl. Ex. B.; see also Compl. ¶ 25.

Farkas' criminal trial began on April 4, 2011. Compl. ¶ 32. On April 8, 2011, National Union advised Farkas' counsel that the invoices submitted had exceeded $1 million and that National Union would not advance funds over $1 million without approval of the bankruptcy court. See Compl. Ex. C.[1] National Union indicated that it would make additional payments once the bankruptcy court approved further expenditures, subject to a complete reservation of its rights and pursuant to the terms and conditions of the December 2010 agreement. Id.

On April 19, 2011, while the parties awaited a ruling from the bankruptcy court, the jury found Farkas guilty of all 16 counts of fraud and conspiracy to commit fraud. See Def.'s Opp'n Mot. Prelim. Inj., Ex. D (verdict form). On April 28, 2011, National Union informed Farkas that the jury's verdict triggered the "in fact" element of Exclusions 4(a) and 4(c), and on that

---

[1] The letter stated that the amount paid to date was $809,956.48 and that payments totaling $119,021.11 were being processed, which left $71,022.41 outstanding from the $1 million authorized by the bankruptcy court. The total for the unpaid invoices submitted for payment at that point was $454,024.34.

basis, National Union would no longer fund defense costs. Compl. Ex. D. National Union also reserved the right to seek repayment from Farkas for the defense costs that it had already advanced. See id. On May 6, 2011, the bankruptcy court entered an order permitting National Union to advance additional defense costs to Farkas. See Pl.'s Mem., Ex. 6 at 2.

To date, National Union has paid $928,977.59 to fund Farkas' defense, see Pl.'s Mem., Ex. 1 ¶ 21, but has not paid any other invoices for defense costs, see Compl. Exs. C, D; Pl.'s Mem. at 8 ¶ 26. At a minimum, Farkas seeks the unpaid portion of the $2,035,288.63 in defense costs he alleges he has incurred through trial and verdict. In its counterclaim, National Union seeks repayment for the nearly $930,000 in funds it advanced to Farkas under the Policy.

## II. DISCUSSION

### A. Standard of Review

The parties agree that the pending dispute is one of contract interpretation and is, therefore, a question of law. See, e.g., St. Paul Fire and Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC, 572 F.3d 893, 897 (11th Cir. 2009) ("The interpretation of provisions in an insurance contract is a question of law . . . .")(citation omitted); River v. Commercial Life Ins. Co., 160 F.3d 1164, 1169 (7th Cir. 1998)("Under Illinois

law, the interpretation of an insurance policy, even an ambiguous policy, presents questions of law that are appropriately resolved by summary judgment.")(citations omitted).[2] Entry of summary judgment is warranted when, as here, "'there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'" Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 958 (4th Cir. 1996)(quoting Fed. R. Civ. P. 56(c)).

### B. Triggering of the "In Fact" Exclusions

In addressing plaintiff's Motion for a Preliminary Injunction, the Court held that the jury's guilty verdict in Farkas' criminal trial triggered Exclusions 4(a) and 4(c). See Dkt. No. 27 at 6-7. This conclusion was based on the unambiguous language of the Policy, which excludes liability for "any payment for Loss in connection with a Claim made against an insured . . . arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an Insured was not legally entitled" or "arising out of, based upon or attributable to the committing in fact of any criminal, fraudulent or dishonest act, or any willful violation of any statute, rule or law." Compl. Ex. A ¶ 4 (emphasis added).

---

[2] Although the parties do not agree as to whether Florida law or Illinois law governs the dispute, they agree that there is no material difference between these two states' applicable law and therefore do not engage in choice of law analysis.

Although plaintiff argued during the preliminary injunction hearing and in the present motion that the "in fact" language is ambiguous, the majority of the cases addressing an exclusion triggered by an "in fact" finding support the view that the exclusion takes effect with "some pertinent factual finding" that an insured's behavior fell within an exclusion. See, e.g., Va. Mason Med. Ctr. v. Exec. Risk Indem. Inc., No. C07-0636MJP, 2007 WL 3473683, at *5 (W.D. Wash. Nov. 14, 2007)(holding that "phrase 'in fact' requires an entry of some pertinent factual finding before [the exclusion] is triggered. . . [which] could result from a final decision on the merits in the underlying case or from a [judicial] determination" that an insured was not entitled to coverage); PMI Mortg. Ins. Co. v. Am. Int'l Specialty Lines Ins. Co., No. C 02-1774 PJH, 2006 WL 825266, at *5-6 (N.D. Cal. Mar. 29, 2006)(holding that "in fact" phrase "refers to something which is put forward as 'objectively real' or which can be 'objectively verified,'" and "within the context of the exclusion here should be read to require either a final adjudication, including a judicial adjudication, or at a minimum, at least some evidentiary proof that the insured reaped an illegal profit or gain.") (emphasis in original). There can be no reasonable dispute that the jury verdict here is an objectively verified and pertinent factual finding.

8

Several courts have held that, in some insurance contracts, a finding "in fact" requires a final adjudication. See, e.g., St. Paul Mercury Ins. Co. v. Foster, 268 F. Supp. 2d 1035, 1045-46 (C.D. Ill. 2003); Am. Chem. Soc. v. Leadscope, Inc., No. 04AP-305, 2005 WL 1220746, at *11-12 (Ohio App. Ct. May 24, 2005). Yet, none of these cases defines a final adjudication as an appeal. See St. Paul Mercury Ins., 268 F. Supp. 2d at 1045 (holding that the "issue [of whether an exclusion was triggered] remains to be determined at trial in the underlying litigation" so "any determination as to whether an insured in this case gained personal profit in fact must await resolution of the underlying litigation").

There is simply no support in case law for plaintiff's position that a jury verdict does not trigger the "in fact" requirement of the Exclusions. Although Farkas is pursuing an appeal of his criminal conviction and continues to claim innocence, the evidence presented during the approximately two-week jury trial was overwhelming. In addition to the evidence and testimony presented at trial, all of Farkas' co-conspirators pleaded guilty to fraud counts and assigned guilt to Farkas in sworn statements. See Def.'s Opp'n Mot. Prelim. Inj., Exs. J-L (Paul Allen, Raymond Bowman, Desiree Brown statements of facts).

With respect to determining when the "in fact" language is

satisfied, Farkas relies on Pendergest v. Certain Underwriters at
Lloyd's of London, 600 F.3d 562 (5th Cir. 2010), for the
proposition that an insurer cannot unilaterally decide that an
exclusion has been triggered absent explicit contractual language.
See Pl.'s Mem. at 1. According to Farkas, National Union's
conclusion that the jury verdict is an "in fact" finding was an
impermissible unilateral decision. He contends that National Union
was required to obtain a declaratory judgment in a parallel
proceeding before it could cease payments. Yet, contrary to
Farkas' position, Pendergest takes it for granted that "in fact
language" is triggered by a "final adjudication by the
factfinder." 600 F.3d at 573 (observing that courts "do not
require a final adjudication by the factfinder in the underlying
case, but rather offer it as a coequal alternative to having a
court make the assessment in a separate coverage
proceeding.")(emphasis in original). Pendergest permits an insurer
whose policy includes the "in fact" language — which has a
"broader scope" than a provision containing the phrase "final
adjudication," for example — to obtain a declaratory judgment
rather than await a final judgment. Id. ("In fact" language
"requires a final decision on the merits in either the underlying
case or a separate coverage case, or an admission by the
insured."). The court explained that "[i]n bargaining for 'in

10

fact' language, then, the insurer reserves the right to litigate the coverage question outside of the underlying action for which coverage is sought." Id. Pendergest does not support Farkas' different argument that an insurer pointing to the existence of a jury verdict is required to obtain a declaratory judgment before withholding benefits. Id.

The Court finds that the jury verdict was an "in fact" finding that triggered Exclusions 4(a) and 4(c) and that National Union did not act unilaterally when it ceased making payments.

### C. Costs Incurred Before Exclusions Were Triggered

Farkas argues that whatever the triggering event — be it the jury verdict, as National Union argues, or the entry of an order in the present action, or the conclusion of his appeal of his conviction, as plaintiff advocates - National Union is obligated to pay the defense costs incurred up through the triggering event. In other words, Farkas argues that the unpaid invoices that were submitted before the jury announced its verdict must be paid.

Farkas' argument ignores the consequence of a particular claim being excluded. Under Clause 4, National Union is not required to "make any payment" for an excluded claim. Compl. Ex. A ¶ 4 (emphasis added). Given the "in fact" finding of the jury that Farkas, through TBW, engaged in fraud, Farkas' conduct was never actually covered under the Policy, and he was therefore never

entitled to the monies advanced to him. Pursuant to Clause 8, National Union has the right to seek recoupment of any costs it advanced before it determined that an exclusion applied. Id. ¶ 8.

Farkas contends that because the Policy is one for the advancement of costs, the contract contemplates such advancement even under a situation where the insured would have to repay the funds. See Pl.'s Reply at 9 (arguing that National Union must "live up to its agreement to advance defense costs prior to a coverage determination, and seek recoupment according to the specific provision in the Policy"). Neither as a matter of contract interpretation nor for practical purposes would it be appropriate for the Court to order National Union to expend funds for an unarguably excluded claim even if National Union could immediately seek recoupment of the payment.

An important fact here is that this is not a case in which the insurer dragged its feet before advancing costs or engaged in otherwise dubious behavior. See Nat'l Union Fire Ins. Co. v. Brown, 787 F. Supp. 1424, 1433-34 (S.D. Fla. 1991), aff'd 963 F.2d 385 (11th Cir. 1992). There is no allegation that National Union did not timely pay defense counsel's invoices before April 8, 2011, when it notified Farkas that the submitted invoices exceeded the $1 million authorized by the bankruptcy court. That the parties had to await a second order of the bankruptcy court, which

12

was not issued until after the jury reached its verdict, puts this case in a unique posture. Presumably, had the bankruptcy court entered the order before April 19, 2011, National Union would have advanced more defense costs. On this record National Union was not dilatory in meeting its obligations.

For these reasons, the Court rejects Farkas' argument that he is entitled to the defense costs that were incurred before the return of the jury verdict.

### D. Recoupment

The Policy states that defense costs advanced by National Union "shall be repaid to the Insurer by the Insureds or the Company, severally according to their respective interests, in the event and to the extent that the Insureds or the Company shall not be entitled under the terms and conditions of this policy to payment of such Loss." Compl. Ex. A ¶ 8. Plaintiff argues that defendant cannot recoup the $928,977.59 it advanced to him in this litigation because the Policy does not impose joint and several liability on Farkas and TBW and because defendant has already filed a claim for the funds in the TBW bankruptcy litigation.

National Union correctly responds that there is nothing in the law prohibiting it from filing a claim against TBW in the bankruptcy proceeding while also pursuing its right to recoupment against Farkas in this civil action. See Def.'s Reply. at 6-7.

13

Receipt of funds in one proceeding would offset the other. Id.
Clause 8 provides for payment severally from the insured and the
company according to their respective interest. Compl. Ex. A ¶ 8.
Farkas had an interest in the funds dispersed for his defense, and
payment from the TBW bankruptcy would simply offset any funds that
could be recouped from Farkas. For all of these reasons,
plaintiff's argument is unavailing and judgment will be entered in
National Union's favor on Count I of the counterclaim.[3]

### E. Motion to Stay Pending Appellate Review

Plaintiff requests that, should this Court determine that the
jury verdict triggered the Exclusions in the Policy, it should
stay the decision pending the Fourth Circuit's review of Farkas'
criminal conviction, relying on the deposition of a National Union
representative who testified that should plaintiff "be successful
on appeal, it is possible that National Union might determine that
the triggering of the Exclusions has been nullified." Pl.'s Opp'n
Def.'s Mot. Summ. J. at 9 (citing Vollmer Dep. at 30:18-32:26,

---

[3] Both parties claimed, in the alternative, damages for breach of
contract. The Court's summary judgment ruling renders National
Union's claim for breach, Count II of the counterclaim, moot.
Although Farkas' defense counsel went to great lengths to keep
National Union informed about the costs counsel expected to incur,
defense counsel were always on notice that National Union reserved
its rights to invoke the Exclusions and to seek recoupment. Once
the "in fact" determination was made, the Exclusions applied and
National Union was not required to advance any further costs
incurred.  For these reasons, plaintiff's breach of contract claim
will be dismissed.

14

32:25-33:17). Defendant objects to this request, arguing that it
is not justified by the case law. Def.'s Reply at 8 (citing
Pendergest, 600 F.3d at 576 ("direct[ing] the civil coverage
action to proceed even where the criminal action had not yet
concluded")).

    In considering whether a stay is appropriate pending the
outcome of an appeal, the Court must use the factors announced in
Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008).
See Solis v. Washington,  No. C08-5479BHS, 2010 WL 1708831, at *2
(W.D. Wash. Apr. 27, 2010)("In deciding whether to issue a stay
pending such an appeal, the district court must apply the same
four-part standard it applies in reviewing requests for a
preliminary injunction.")(citing Hilton v. Braunskill, 481 U.S.
770, 776 (1987)); see also Van Velzor v. Cent. Garden & Pet Co.,
No. 3:10-cv-00085 JWS, 2011 WL 971810, at *2 (D. Ala. Mar. 16,
2011)(same). Winter requires a plaintiff to "establish that he is
likely to succeed on the merits, that he is likely to suffer
irreparable harm in the absence of preliminary relief, that the
balance of equities tips in his favor, and that an injunction is
in the public interest." 555 U.S. at 20; accord Real Truth About
Obama, Inc. v. FEC, 575 F.3d 342, 346-47 (4th Cir. 2009), rev'd on
other grounds.

    Plaintiff fails to satisfy these elements. He cannot show

15

irreparable harm because the Fourth Circuit appointed counsel
through the Criminal Justice Act to represent him on appeal. The
appeal has been fully briefed and is scheduled for oral argument
on May 16, 2012. Given the volume of evidence produced during the
trial and the unanimous jury verdict on 16 counts, the likelihood
of Farkas overturning all his convictions on appeal is very slight
and weighs against a stay. Additionally, Farkas has made no
showing that a stay would materially impact the parties' positions
at all, much less that there is a potential for irreparable
injury, as <u>Winter</u> requires. Similarly, there has been no showing
that either equity or the public interest necessitates a stay in
this case. Accordingly, the Court finds that a stay of this
decision is not warranted.

### III.   CONCLUSION

For the above-stated reasons, plaintiff's Motion for Summary
Judgment will be denied and defendant's Motion for Summary
Judgment as to Count I of its counterclaim will be granted by an
Order to accompany this Memorandum Opinion.

Entered this 21st day of March, 2012.

Alexandria, Virginia

/s/ _____

Leonie M. Brinkema
United States District Judge